**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Shirley Sternaman,

Plaintiff,

v.

Experian Information Solutions, Inc., f/d/b/a TRW, a foreign corporation; Trans Union Corporation, a foreign corporation; CSC Credit Services, Inc., a foreign corporation; and Cross Country Bank, a foreign corporation,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-402 ADM/FLN

---

Peter F. Barry, Esq., and Jason Baumetz, Esq., Barry Law Office, Little Canada, MN, appeared on behalf of Plaintiff.

Gregory E. Woodard, Esq., Jones Day Reavis & Pogue, Irvine, CA, appeared for and on behalf of Defendant Experian Information Solutions.

Marianne D. Short, Esq., and Thomas L. Nuss, Esq., Dorsey & Whitney, Minneapolis, MN, appeared for and on behalf of Defendant Cross Country Bank.

---

## I. INTRODUCTION

On November 6, 2001, Defendant Experian Information Solutions, Inc's., ("Experian") Motion for Summary Judgment [Doc. No. 42] and Defendant Cross Country Bank's ("Cross Country") Motion for Summary Judgment [Doc. No. 58] were argued before the undersigned United States District Judge. For the reasons set forth below, both Summary Judgment Motions are granted.

FILED 11-20-01
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. 11-20-01
DEPUTY CLERK

## II. BACKGROUND

### A. The Claims

Plaintiff Shirley Sternaman ("Sternaman") alleges that Experian, a consumer credit reporting agency, is liable under the Fair Credit Reporting Act and several common law theories, for the reporting of a Cross Country bank account on her credit report. Sternaman alleges that Experian failed to maintain reasonable procedures to insure maximum possible accuracy of her credit report in violation of 15 U.S.C. § 1681e(b), and failed to conduct a reasonable investigation after Plaintiff disputed the accuracy of information on her credit report in violation of 15 U.S.C. § 1681i(a). Sternaman claims that as a result she sustained actual damages in the form of credit denials, increased credit costs, humiliation, frustration, anger, lost wages and attorneys' fees. See Pl. Mem. in Opp'n to Experian's Mot. for Summ. J. at 3. Sternaman further alleges that Experian's conduct was willful, entitling her to statutory and punitive damages. Id.

Sternaman also alleges that Cross Country violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation after receiving notice of a consumer dispute. Sternaman claims that Cross Country inaccurately verified the account of a Shirley Morgan as belonging to Sternaman, entitling her to out-of-pocket damages, damages for emotional distress, statutory and punitive damages. See Pl. Mem. in Opp'n to Cross Country's Mot. for Summ. J. at 2. Sternaman alleges that Cross Country's actions were willful, and she asserts common law claims for defamation, negligent infliction of emotional distress, and invasion of privacy. Id.

**B. The Facts**[1]

In or about August, 1996, North Star Bank denied Sternaman's home improvement loan application based on information contained in an Experian credit report. As a result of this denial, Sternaman obtained a copy of her credit report and discovered a number of entries that did not belong to her. Sternaman told Experian that the mistaken information included "a Chapter 7 bankruptcy and several civil judgments." Experian Ex. 1. Experian reinvestigated the allegedly mistaken information identified by Sternaman and removed it from her credit report when it was unable to verify the disputed items. Sternaman's credit report at that time also included a Cross Country bank account, and Sternaman testified that she "did realize it was on there." Sternaman Dep. at 169:8-9. Nevertheless, Sternaman did not request a reinvestigation of the Cross Country account:

> [Experian] cleaned up the bankruptcy and they cleaned up the judgments. We did not tell them – or I guess what we didn't do is tell them Cross Country is not ours. I was more concerned . . . about the bankruptcy and the judgments. So when we got [the updated Experian file disclosure] back and we looked through it, it was like – or I got it I should say, I looked through it and I thought oh, ok, well they cleared all this up. This is all cleared up.

Sternaman Dep. at 152:11-20. After receiving her updated file disclosure in 1996, Sternaman had no further contact with Experian or Cross Country until 1998. Sternaman Dep. at 153.

On June 16, 1998, Sternaman applied for another loan from North Star Bank. North Star Bank denied Sternaman's application, allegedly based upon a bad credit report provided by Experian that contained, *inter alia*, a derogatory Cross Country bank account listing. In addition to the Cross Country listing, Sternaman's Experian credit file included three other derogatory accounts: (1)

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

Discover Card Services, (2) Ford Motor Credit Corp., and (3) RNB - Daytons. See Experian Ex. 9. Only the Cross Country account is disputed as inaccurate. Sternaman made only one relevant application for credit during the period in which an Experian credit report was accessed prior to the removal of the Cross Country account in March, 1999. According to the credit denial statement from North Star Bank, the credit was denied due to "Delinquent Past or Present Obligations," and "[t]he credit decision was based in whole or in part on information obtained from an outside source other than a credit reporting agency." Experian Ex. 11.

Sternaman, believing that the Cross Country account did not belong to her, contacted Experian and requested that the account be reinvestigated. In response, Experian contacted Cross Country in writing to verify that the account information in Cross Country's files matched Sternaman's identifying information. In July, 1998, Experian sent Cross Country a "Consumer Dispute Verification" ("CDV") form, which identifies the consumer and the basis for the dispute, and asks the creditor to verify the information reported. Experian asserts that Cross Country reviewed its records and specifically verified that this account did in fact belong to Sternaman.[2] See Experian Mem. in Supp. at 2. On or about August 12, 1998, Sternaman sent a second letter to Experian regarding information contained her credit report. Experian then sent a second CDV to Cross Country stating specifically that Sternaman claimed the account belonged to Shirley A. Morgan, including Shirley Morgan's social security number. All parties agree that Cross Country returned this CDV to Experian verifying the account information. See Pl. Mem. in Opp'n to Experian's Mot. for Summ. J. at 7; Cross Country's Mem. in Supp. at 8. Experian's records include

[2] No Cross Country record of this CDV exists because Cross Country does not keep records of CDVs. Experian represented at oral argument that Experian's "dispute resolution log" reflects that a CDV was sent and verified in July, 1998.

an "ACDV Response Activity Report" created on September 2, 1998, showing the information it received from Cross Country in August, 1998. It verified the name and social security number for the Cross Country account noted a different address than Sternaman's. See Experian Mem. in Supp. at 8. After each reinvestigation, Experian notified Sternaman that the account information had been verified by Cross Country.

On or about February 9, 1999, Sternaman contacted Cross Country and was informed that no record existed of a Cross Country Bank account in Sternaman's name.[3] Sternaman then contacted Experian on or about February 12, 1999, with this information. Experian subsequently telephoned Cross Country and learned that the name on the Cross Country account was not Sternaman's. Experian then removed the Cross Country account information from Sternaman's credit report.

## III. DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The United States Supreme Court, in construing Rule 56(c), stated in Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

---

[3] Cross Country maintains that at all times it supplied only the information contained within its records in response to the Experian verification requests. See Cross Country Mem. in Supp. at 9.

On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate. Id. However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment . . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992)(citation omitted). Moreover, a plaintiff facing a summary judgment motion cannot "get to a jury without any significant probative evidence tending to support the complaint." Rath v. Selection Research, Inc., 978 F.2d 1087, 1091 (8th Cir. 1992)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). In addition, "summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." Krenik, 47 F.3d at 959.

**B. Experian's Motion**

Sternaman bears the burden of proving that an Experian credit report was a causal factor in the denial of credit. See Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1161 (11th Cir. 1991). To satisfy this burden, Sternaman has the "affirmative duty of coming forward with evidence supporting [her] claim that [Experian's] alleged inaccurate report caused [her] harm." Id.

When Sternaman's application for a personal loan was denied by North Star Bank in June, 1998, her Experian credit file included four derogatory accounts: (1) Cross Country Bank, (2)

Discover Card Services, (3) Ford Motor Credit Corp., and (4) RNB - Daytons. See Experian Ex. 9. Only the Cross Country account is disputed as inaccurate. Sternaman made only one relevant application for credit during the period in which an Experian credit report was accessed prior to the removal of the Cross Country account in March, 1999. According to the credit denial statement from North Star Bank, the credit was denied due to "Delinquent Past or Present Obligations," and "[t]he credit decision was based in whole or in part on information obtained from an outside source other than a credit reporting agency." Experian Ex. 11.

Sternaman's only evidence linking the Experian report to the credit denial is her claim that she was "told by North Star Bank" that the denial was due to derogatory information on her Experian credit report. Pl. Mem. in Opp'n to Experian's Mot. for Summ. J. at 4 (citing Sternaman Dep. at 21). However, this bit of hearsay fails to support her assertion that North Star Bank ever specified that its credit denial was based on the Experian credit report.[4] "Hearsay evidence is insufficient to create

---

[4] The Sternaman deposition testimony cited to support her claim reads as follows:

> Q: [T]he $1,500 loan that you got denied for at North Star Bank, is that denial now to your recollection based on an Experian credit report?
> A: Originally an Experian credit report.
> Q: Why did you say "originally an Experian credit report"?
> A: Because when this came through again with a denial because we couldn't get the first time – in '96, we couldn't get the loan. So when this came through again with Experian as a denial, I asked a fellow employee, one of our officers, who do backgrounds and they use CSC as their credit.

Sternaman Dep. at 21.

> Q: What I want to find out from you though is whether after having looked at your complaint, Paragraph 45 of the complaint specifically, does that refresh your recollection that the credit denial in 1998 . . . was based on an Experian credit report rather than a CSC credit report? Is that a true statement?
> A: Yes, it is. . . . I think [CSC] did play a part in our denial, but as far as the letter shows and the complaint shows, it was Experian that caused the problem initially.

Sternaman Dep. at 23. This testimony speaks to the allegation that it was an Experian credit report that North Star Bank had access to in its consideration of Sternaman's loan as opposed to a CSC credit report, however it does not establish that North Star Bank actually relied on the Experian report, or if it did, that it relied on any particular portion of the report.

a material issue of fact." Redd v. Fisher Controls, 814 F.Supp. 547, 550 (W.D. Tex. 1992).

Sternaman has presented no evidence to establish that her credit denial was caused by inaccurate entries on an Experian credit report. On North Star Bank's "Statement of Credit Denial," created on June 16, 1998, and mailed to Sternaman, in the section of the form titled "DISCLOSURE OF USE OF INFORMATION OBTAINED FROM AN OUTSIDE SOURCE," the box checked indicates that its decision was based, in whole or part, on information from a source other than a consumer reporting agency. Experian Ex. 11. Further, the box that would indicate a credit decision "based in whole or in part on information obtained in a report from [a] consumer reporting agency" was left unchecked, and no reporting agency was listed in that section. Id. Viewing the facts in the light most favorable to Sternaman, even if she were to show that the Experian credit report was the basis of the denial, there is no evidence to support her claim that the derogatory entry regarding Cross Country specifically was the basis for the denial, rather than any one, or all, of the remaining three derogatory entries. Because Sternaman is unable to satisfy her burden of proof regarding causation, Experian's Motion for Summary Judgment is granted.

**C. Cross Country's Motion**

Assuming, *arguendo*, Sternaman were able to prove causation, Sternaman must also show that she actually suffered damage resulting from the allegedly inaccurate credit report. See Cahlin, 936 F.2d at 1160-61. Sternaman claims that she was harmed as a result of Cross Country's verifying the information on her account as accurate in response to the CDVs sent to it by Experian in July and August, 1998. Sternaman has identified no facts, however, that support the conclusion that she was harmed as a result of Cross Country's alleged act of "verifying" her account information. The only credit denial claimed by Sternaman as allegedly causing her damage was the June 16, 1998, denial

of the loan by North Star Bank. However, this denial occurred prior to Cross Country's verification of her account information.

No other credit denials based upon the Experian credit report, or Cross Country's verification of the information contained in the report, have been alleged by Sternaman to have occurred after (or before) the verifications by Cross Country. Sternaman testified that she has made no credit applications since June 16, 1998, in which an Experian credit report was used by the creditor. Sternaman Dep. at 177. Sternaman simply has not been denied credit at any time after Cross Country allegedly verified any information relating to her Experian credit report. As such, Sternaman is unable to satisfy her burden of proof regarding damages attributable to the actions of Cross Country. Accordingly, Cross Country's Motion for Summary Judgment is granted.

**D. Common Law Claims**

Because Sternaman is unable to satisfy her burden of proof of causation regarding Experian, or her proof of damages regarding Cross Country, her common law claims against both parties are moot. Additionally, Sternaman's own testimony impeaches any showing of willfulness which would be required to support her common law claims. Sternaman testified that she did not believe either Experian or Cross Country's employees were acting purposely to hurt her, and that she had "no facts" to support such a conclusion. Sternaman Dep. at 164, 231-232. Experian and Cross Country's Motions for Summary Judgment on the common law claims are granted.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Experian's Motion for Summary Judgment [Doc. No. 42] is **GRANTED**, and
2. Cross Country's Motion for Summary Judgment [Doc. No. 58] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: November 19, 2001

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd